```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MIKOL S. KELSIC,

                              Plaintiff,            MEMORANDUM AND ORDER

        - against -                                 14-cv-3342 (SLT) (LB)

DUKE TERREL, et al.,

                              Defendants.
------------------------------------------------------------X
```

**TOWNES, United States District Judge,**

Plaintiff Mikol S. Kelsic ("Kelsic") commenced this action on May 23, 2014 for injuries arising out of a medical examination performed on May 16, 2012 at the Metropolitan Detention Center ("MDC") in Brooklyn, New York. Former MDC Warden Duke Terrell, former MDC Associate Warden Christine Dynan, and former MDC Health Services Assistant Jeremy Marousis-Bush (collectively "Defendants")[1] move jointly to dismiss the Complaint or, in the alternative, for summary judgment. (Doc. 46). Also before the Court is Kelsic's "Motion for Extension of Deadline/Continuance of Time." (Doc. 58.) Because Plaintiff did not administratively exhaust his claim, Defendants' motion is **GRANTED**. Because the deadlines sought in Kelsic's motion have long since passed without action on his part, and because the extension he seeks would in any event be futile, that motion is **DENIED as moot**.

---

[1] Kelsic also names as defendants a correctional officer and "known and unknown employees/doctors/staff" at MDC. These other defendants have never been served.

# FACTS[2]

1. The Medical Examination and Plaintiff's Administrative Remedy Requests

On May 10, 2012, Kelsic was arrested and transferred to MDC as a pre-trial detainee. As part of MDC intake procedure, Kelsic received a medical evaluation on May 16, 2012, which included a rectal examination. The rectal examination consisted of the care giver placing "several" fingers in Kelsic's rectum "with excessive force." (Complaint, Doc. 1, § III.) The test was conducted twice "for no stated reason." (Affidavit of Mikol S. Kelsic in Opp'n to Defs.' Mot. To Dismis or Alternatively for Summary Judgment ("Kelsic Aff."), Doc. 51, ¶ 8.) As a result of this examination, Kelsic felt "shame," suffered "side effects," including pain and "warts," and later developed ulcerative colitis. (Complaint, Doc. 1, § III; Kelsic Aff., Doc. 51, ¶ 10; Ex. 1.)

Kelsic was transferred out of MDC, and out of federal custody, on June 7, 2012. (Defs.' Statement of Material Facts As To Which There is No Genuine Issue To Be Tried ("56.1"), Doc. 46-3, ¶ 3.) Kelsic returned to MDC on May 31, 2013, where he remained until July 3, 2013, when he was transferred to USP Canaan and then on to FCI McKean in Bradford, Pennsylvania on July 18, 2013. (*Id.*, ¶ 4.)

At an initial conference before Magistrate Judge Lois Bloom on October 31, 2014, Kelsic stated that he filed a complaint about the rectal examination while he was at MDC in June 2012. (Transcript of Telephone Conference, Oct. 31, 2014, Doc. 40, 6-7.) The complaint was made on a BP-A0148 form, informally known as a "cop-out." (Kelsic Aff., Doc. 51, ¶ 11.) The BOP has no record of Kelsic filing the cop-out, or any other administrative remedy requests concerning the rectal examination before the initiation of the instant action. (Declaration of Kenneth Bork

---

[2] The following facts are undisputed, or, where disputed, taken in favor of the non-moving party.

("Bork Decl."), Doc. 46-5., ¶ 7; Supplemental Declaration of Kenneth Bork ("Bork Supp."), Doc. 62-2, ¶¶ 7-9.)

In September 2013, Kelsic wrote a letter to the Department of Justice, Office of Inspector General ("OIG") in New York, which was forwarded to the Federal Bureau of Prisons ("BOP"), Office of Internal Affairs. (Doc. 10, 5.) In his Complaint, Kelsic alleges the September letter related to the improper rectal examination. (Complaint, Doc. 1, ¶ D.2.) On March 25, 2014, Kelsic wrote a letter describing the MDC rectal examination directly to BOP, Office of Internal Affairs, as a follow-up to the September letter that was forwarded by OIG. (Doc. 9, 4.)

Plaintiff commenced the instant action on May 23, 2014. (Complaint, Doc. 1.) After being served with the instant motion in December 2014, and before serving his opposition in March 2015, Kelsic "re-filed" his allegations of sexual abuse relating to the rectal examination. (Kelsic Aff., Doc. 51, ¶ 24.) BOP database records show the following: 1) that Kelsic filed an Appeal on a form BP-10 with BOP's Northeast Regional Office on March 9, 2015 alleging sexual abuse by staff members at MDC; 2) on April 8, 2015, Kelsic received the Regional Director's response and filed an Appeal on form BP-11 with the BOP's Central Office on April 11, 2015; and 3) the BP-11 Appeal was procedurally rejected on June 11, 2015 due to Kelsic's failure to include a copy of his BP-10 and the Regional Director's response, but Kelsic was advised to refile the BP-11 within fifteen days. (Bork Supp., Doc. 62-2, ¶¶ 8-9.)

Kelsic has not filed any administrative tort claims with the BOP. (Bork Decl., Doc. 46-5, ¶ 10-11.)

2. The Instant Motions

Currently before the Court is Defendants' motion to dismiss the Complaint or, in the alternative, for summary judgment. Defendants construe the Complaint as primarily alleging

3

*Bivens* claims against the named Defendants in their official and individual capacities. Defendants also address the possibility that the Complaint attempts to raise claims under the Federal Tort Claims Act ("FTCA").

First, with respect to the official-capacity *Bivens* claims, Defendants move to dismiss pursuant Federal Rule of Civil Procedure ("FRCP") 12(b)(1) on sovereign immunity grounds. Second, Defendants argue that the individual-capacity *Bivens* claims must be dismissed pursuant to FRCP 12(b)(6) for Kelsic's failure to allege that any of the named Defendants were personally involved in the event giving rise to his claims. Third, Defendants move for summary judgment on all of Kelsic's *Bivens* claims pursuant to FRCP 56 because he failed to exhaust his administrative remedies. Fourth, Defendants argue that any potential FTCA claims Kelsic may have must also fail because Kelsic never filed an administrative tort claim with the BOP.

Kelsic's Affidavit in opposition to Defendants' motion essentially argues that because his complaints contain allegations of sexual abuse, they are not subject to the normal BOP administrative remedy filing time limits. Rather, under the BOP regulations and program statement promulgated pursuant to the Prison Rape Elimination Act ("PREA"), grievances alleging sexual abuse may be filed at any time. Therefore, Kelsic resubmitted his complaint in an attempt to now exhaust his administrative remedies, and the newly submitted grievance was not untimely.

On June 4, 2015, Kelsic filed a "Motion for Extension of Deadline/Continuance of Time" in connection with his attempts to properly file his BP–11 with the BOP's Central Office. (Doc. 58.) In the motion, Kelsic appears to request that the case be stayed until July 15, 2015 in order for him to complete his filing. Kelsic has not provided the Court with any further updates with respect to the status of his BP–11.

## DISCUSSION

As a preliminary matter, the pleading does not allege a statutory basis for recovery. However, "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). A court must "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 878, 790 (2d Cir. 1994)). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

The Court agrees with Defendants' characterization of the Complaint as raising claims pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). However, the Complaint cannot be reasonably construed to raise claims pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*. Kelsic has never filed an administrative tort claim with BOP, a prerequisite for bringing such a claim. 28 U.S.C.A. § 2675(a). Nor did he name or assert any claims against the United States, the proper defendant in an FTCA suit. *Mignogna v. Sair Aviation, Inc.*, 937 F.2d 37, 40 (2d Cir. 1991).

Defendants argue that Plaintiff's *Bivens* claims should be dismissed for failure to exhaust the available administrative remedies as required by the Prisoner Litigations Reform Act ("PLRA"). The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate

suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Because "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance," *Woodford v. Ngo*, 548 U.S. 81, 95 (2006), any "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter*, 534 U.S. at 524).

There are four procedural steps through which inmates must proceed in order to exhaust their administrative remedies before they can file a *Bivens* claim:

> The first step is to submit a BP–8, or informal grievance, to prison staff. If the inmate is unable to resolve the complaint informally, the inmate must file an Administrative Remedy Request, or BP–9, with the Warden, who has 20 days to respond. The inmate may then appeal the Warden's decision to the Regional Director, who has 30 days to respond. If the inmate is still not satisfied, he may appeal that decision to the General Counsel, who has 40 days to respond. If an inmate does not receive a response or notice of extension within the allotted time, the inmate may consider the absence of a response to be a denial at that level.

*Baez v. Kahanowicz*, 469 F.Supp.2d 171, 178 (S.D.N.Y. 2007), *aff'd*, 278 Fed. App'x 27 (2d Cir. 2008); *see also* 28 C.F.R. § 542.18. Although the BP–8 submission/informal grievance requirement may sometimes be waived, a BP–9 must be submitted within 20 calendar days of the conduct forming the basis of the complaint, absent a valid reason for delay. 28 C.F.R. § 542.14(a); BOP Program Statement 1330.16, effective Dec. 31, 2007 through Aug. 19, 2012, Ex A. to Bork Supp., ¶¶ 7-8. Generally, a valid reason for delay is one that prevents the inmate from submitting a timely request. 28 C.F.R. § 542.14(b). As relevant here, "[v]alid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; . . . ." *Id.*

"[I]nmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Rather, failure to exhaust is "an affirmative defense for which Defendants bear the burden of proof." *Garcia v. Heath*, 12-CV-4695 (CM), 2013 WL 3237445, at *4 (S.D.N.Y. Jun. 25, 2013) (citing *Jones*, 549 U.S. at 212). Accordingly, it is more appropriate in this case to proceed under a summary judgment standard, "giving the plaintiff an opportunity to rebut the claim of failure to exhaust in his opposition." *Williams v. Metro. Det. Ctr.*, 418 F.Supp.2d 96, 101 (E.D.N.Y. 2005).

In a motion pursuant to Rule 56, summary judgment is appropriate only when "there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a); *see Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. *See Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 256 (1986). If the movant meets this burden, "the non-movant must set forth specific facts showing that there is a genuine issue for trial." *See Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (internal quotations and citation omitted). The non-movant cannot avoid summary judgment "through mere speculation or conjecture" or "by vaguely asserting the existence of some unspecified disputed material facts." *Id.* (internal quotations and citations omitted).

In this case, Defendants have adduced evidence that Kelsic failed to exhaust his administrative remedies. Specifically, although Kelsic claims to have filed an informal cop-out, it is undisputed that he did not pursue his administrative remedies by filing a BP–9 within 20 days of the examination, or at any time before filing this action. Nor was Kelsic prevented from filing a BP–9 within the appropriate time. He was not transferred out of MDC until June 7, two days after the expiration of the 20 day filing period, and was not physically incapacitated during

7

that time. Although Kelsic claims he was waiting to hear back on his cop-out, and was new to the system, neither of those constitute valid reasons for delay. (Transcript of Telephone Conference, Oct. 31, 2014, Doc. 40, 7:9-16.) Kelsic does not argue that his informal complaint was taking an unusually long time to resolve. *See* 28 C.F.R. § 542.14(b). He merely states he never received any response. Thereafter, Kelsic made no attempt to file a formal request on a BP–9, late or otherwise, until after being served with the instant motion.[3] The PLRA's exhaustion provision requires "proper exhaustion," which means that prisoners must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines," as defined by the prison grievance process. *Woodford v. Ngo*, 548 U.S. 81, 88 and 93 (2006). Because Kelsic never even attempted to file a formal administrative remedy request, either within the appropriate time period, or late with a valid reason for delay, Kelsic failed to exhaust his administrative remedies with respect to his claims.

Although it is true that the BOP regulations and program statement promulgated pursuant to the PREA permit filing sexual assault complaints at any time, this does not save Kelsic's claims. First, it is far from clear that the PREA regulations and program statement are even applicable to Kelsic's claims. National standards implementing the PREA, which eliminated time limits for filing grievances based on sexual assault, became effective on August 20, 2012. 77 Fed. Reg. 37106; 28 C.F.R. § 115.52(b)(1) ("The agency shall not impose a time limit on when an inmate may submit a grievance regarding an allegation of sexual abuse."). The new program statement incorporating the elimination of time limits for sexual assault grievances likewise became effective on August 20, 2012. (Program Statement 1330.17, Bork Supp., ¶¶ 5-6

---

[3] Plaintiff claims he obtained a "real BP–8" during his second stay at MDC, but does not claim that he filed it or a BP–9, and there is no record that he did so. (Kelsic Aff., Doc. 51, ¶ 16.)

and Ex. B.) The Court can find no support for the proposition that the PREA regulations and implementing program statement should be applied retroactively where the alleged sexual assault occurred, and the time to grieve expired, before the PREA regulations went into effect. Indeed, courts have consistently held to the contrary. *See, e.g., Payton v. Thompson*, No. 2:13-CV-92-DPM-JJV, 2015 WL 252277, at *4 (E.D. Ark. Jan. 20, 2015), *appeal dismissed* 15-1513 (8th Cir. June 9, 2015) (PREA did not apply to events that occurred in July 2012); *See also Wakeley v. Giroux*, No. 1:12- CV-2610, 2014 WL 1515681 (M.D. Pa. Apr. 15, 2014) (PREA not applicable to assault that occurred in March 2011).

In any event, there is no need to decide the retroactivity issue since it is undisputed that Kelsic's attempt to exhaust his administrative remedies pursuant to the PREA, even if it is applicable, did not occur until summary judgment briefing. The PREA does not affect the PLRA's exhaustion requirement. *See Porter v. Howard*, 531 F. App'x 792 (9th Cir.) *cert. denied*, 134 S. Ct. 691, 187 L. Ed. 2d 559 (2013); *John Doe 1 v. Michigan Dep't of Corr.*, No. 13-14356, 2015 WL 1600772, at *2 (E.D. Mich. Apr. 9, 2015); *Omaro v. Annucci*, 68 F. Supp. 3d 359, 364 (W.D.N.Y. 2014), *appeal dismissed* (Feb. 10, 2015) ("federal courts that have considered the issue have concluded that the PREA does not excuse an inmate's failure to exhaust his administrative remedies with respect to a claim of sexual misconduct."). And, as the Second Circuit has reinforced, "PLRA exhaustion is a condition that must be satisfied before the courts can act on an inmate-plaintiff's action." *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011) (citing *Harris v. Hegmann*, 198 F.3d 153, 158 (5th Cir. 1999)); *see also* 42 U.S.C.A. § 1997e ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.") It is undisputed that

Plaintiff did not begin to formally grieve the assault until after being served with Defendants' summary judgment motion. (Kelsic Aff., Doc. 51, ¶ 24.) Therefore, Kelsic has failed to exhaust his administrative remedies and the Court cannot act on Kelsic's claims.

Finally, the extra time Kelsic requested of the Court in his Motion for Extension of Deadline/Continuance of Time, has long past. Therefore, this motion is moot.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss or Alternatively for Summary Judgment (Doc. 46) is **GRANTED**. Kelsic's Motion for Extension of Deadline/Continuance of Time (Doc. 58) is **DENIED** as **MOOT**. Kelsic's Complaint is dismissed without prejudice, and the Clerk of Court is respectfully requested to close this case.

**SO ORDERED**

/s/ Sandra L. Townes
SANDRA L. TOWNES
United States District Judge

Dated: June 12, 2017
Brooklyn, New York